QUIÑONES *v.* J. T. SILVA BANKING AND COMMERCIAL CO.

APPEAL from the District Court of San Juan.

No. 536.—Decided October 27, 1910.

LIBEL—ACTION FOR DAMAGES—ENTRY IN COMMERCIAL BOOKS—WORDS LIBELOUS
PER SE.—The words contained in the following entry, made in the books of a commercial firm, are libelous *per se:* "Policy 5,294,310, favor José Lugo Viña, which was paid, but the money retained by clerk, A. Quiñones, $9.32." They impute to the plaintiff the commission of an offense defined in our Code as embezzlement, and the character of the libelous words is not altered by the fact that the sum mentioned would not raise the offense to the grade of a felony.   Nor is it necessary that said entry should be in the words of the

statute, it being sufficient that any person of ordinary ·intelligence can understand that the plaintiff is thereby accused of the unlawful appropriation of money not belonging to him.

ID.—MALICE—DAMAGES.—Malice is a necessary and indispensable requisite for libel in order to give rise to an action for damages, according to the libel law, approved February 19, 1902.

ID.—WORDS LIBELOUS PER SE—PRESUMPTION OF MALICE—PRIVILEGED COMMUNICATIONS.—Under section 5 of the libel law of Porto Rico, approved February 19, 1902, malice shall be presumed to exist when the words used in the injurious communication or writing are in themselves libelous, this presumption vanishing when the libelous writing is addressed to a relative within the third degree, or to a person whom the author has under his guardianship, or when the communication passes between persons having business in partnership or other similar association.

ID.—PRIVILEGED COMMUNICATIONS—WORDS LIBELOUS PER SE—ENTRY IN COMMERCIAL BOOKS.—In the case at bar the court held that although the words of the entry made in the commercial books of the defendant are libelous *per se,* they come under the classification of privileged communications, inasmuch as the entry was made for the information of the directors, shareholders, and persons interested in the defendant company, and not with the intention of making it known to the general public; the plaintiff, therefore, being required to prove the existence of malice.

ID.—PRIVILEGED COMMUNICATIONS—CLERKS OF A COMMERCIAL FIRM.—It being absolutely necessary that a firm or company transacting business should pay a force of clerks who, from the nature of the case, must occupy a position similar to that of a partner, the fact that the obnoxious entry was read and commented on by them does not constitute an unlawful publication of the defamatory words.

ID.—PRIVILEGED COMMUNICATIONS—PROOF OF MALICE.—Where the writing containing the words regarded· as defamatory *per se* comes within the exception of privileged communications, it is necessary to show the existence of malice by other evidence outside the defamatory document.

ID.—PROOF OF DAMAGES CAUSED—WRITING LIBELOUS PER SE—PRIVILEGED COMMUNICATIONS.—When the writing is libelous *per se* and there is no privilege in favor of the defendant, the presentation of such a document as evidence will suffice to entitle the plaintiff to recover at least nominal damages without proving the same in a specific manner; but the contrary happens when the presumption of malice is not held against the· defendant on account of the privileged nature of the communication, in which case the plaintiff must prove the damages resulting therefrom.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for appellant.

*Messrs. Acuña* and *Figueras* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a civil case in which $10,000 damages are claimed for an alleged libel. The facts of the case are briefly the following:

Among other duties of the plaintiff, as an employe of the defendant company, was that of seeking for fire insurance for the insurance companies which his employer represented, among others The Norwich Union Insurance Co. As such employe and in compliance with his duties he tried to secure insurance from Dr. José Lugo-Viña upon his dwelling house, the defendant firm having issued for such purpose and delivered to the plaintiff, at his request, the insurance policy No. 5,294,310, of said Norwich Union Insurance Co., in favor of Don José Lugo-Viña. This document was delivered by Mr. Arturo Quiñones to the customer without his giving to the plaintiff the premium therefor, because said Dr. Lugo-Viña was not at that time entirely decided to take out the policy; however he held the policy in his possession. A few days thereafter Mr. Quiñones ceased to be an employe of the defendant without delivering to said defendant the money for premium aforesaid, Dr. Lugo-Viña not having paid said premium to him or to any other person.

After the plaintiff had left his employment in the banking and commercial house of the defendant, one of the directors thereof caused to be made in the books of said company the following entry, which is copied from the daybook of the transactions carried on in the year 1907, said entry bearing date of November 30 of the year aforesaid.

"Policy 5,294,310, favor José Lugo Viña, which was paid but the money retained by clerk, A. Quiñones, $9.32."

About the time of Holy Week of the year 1908—that is, during the month of April—some of the clerks who were employed at the defendant's banking house saw said entry and read the same and thus it became known by the plaintiff, five or six months thereafter, or about the month of September of the same year, wherefore he instituted the present suit

which he filed in the office of the secretary of the district court under date of February 5, 1909.

It cannot be contended that the words set out in the entry made in the blotter and the daybook of the defendant are not libelous in themselves, if they were not made under such circumstances as to afford protection to the defendant under the claim of privileged communications. They impute to the plaintiff the commission of an offense against the law which is defined in our Code as embezzlement. It is true that the sum mentioned would not raise the offense to the grade of a felony, but this circumstance does not alter the character of the libelous words. Nor is it necessary that the expression complained of as libelous *per se* should be in the words of the statute, it being sufficient that any person of ordinary intelligence can understand that the plaintiff is thereby accused of the appropriation of funds belonging to his employers.

The words used being then found to be libelous in themselves, the only defense which it is necessary to consider is that the entry in the books of the company constituted a privileged communication, and consequently that malice could not be presumed from the mere use of the obnoxious words, but that it must be proven by the complainant from other evidence.

The law authorizing civil actions for the recovery of damages for libel and slander, which was approved on February 19, 1902, declares in section 2, that libel is the malicious defamation of a person made public by writing, printing, or by any of the other means required by the law. So malice is a necessary and indispensable requisite for a libel in order to give rise to an action for damages; but such malice will be presumed or not presumed against the defendant according to the circumstances of the case.

Under section 5 of the libel law of Porto Rico it is enacted that "malice shall be presumed to exist in any injurious communication or writing made without justifiable motive and addressed to any person other than to a relative within

the third degree, or to a person whom the author has under his guardianship, or when said communication passes between persons having business in partnership, or other similar association." (Rev. Stats. P. R., p. 215, sec. 571.)

The case·under consideration is very similar to the case of *Jiménez Sicardó* v. *Díaz Caneja* [14 P. R. Rep., 9], decided by this court on January 30, 1908. In that case we said that "it is a general rule that where terms are used in the defamatory publication which are libelous *per se* the presumption of malice exists against the author of the communication; but under the section of the statute quoted this presumption of malice vanishes when the person to whom the defamatory writing is addressed is shown to be a relative, or a ward, or a partner, or one in other similar association."

The principle is well established and it is only necessary to determine whether or not the defendant in this case and the persons to whom the words complained of were addressed fall within any of the classes prescribed in the section of the law referred to above. If so the presumption of malice arising from the use of the defamatory words is extinguished, and proof is required from outside sources to establish such malice.

The entry containing the alleged libel was made by one of the directors of the defendant company on the books in the matter referred to, and this being so, we think that such entry or writing was caused to appear in said books not only for the purpose of making the circumstance known to the Norwich Union Insurance Company, but also to the shareholders of the J. T. Silva Banking and Commercial Co., who were interested in the general business of the company and wished to know the result of the specific transaction relating to the insurance of Dr. Lugo-Viña. Such appears to have been the real motive in causing the entry to be made in the blotter and daybook.

The appearance in the books of said entry was intended to be known by the other directors and shareholders of the

company and by no other person, and such being the case, it is an undeniable fact that the communication remained only within the knowledge of persons connected with the interests of the company and, therefore, it is covered by the exception mentioned in section 5 to which reference has been made, considering that the directors and shareholders of the defendant have not been alleged to be either relatives or wards among themselves. The Norwich Union Insurance Co. had a definite pecuniary interest in the matter covered by the entry.

It is a fact known to everybody that a merchant's or banker's books are not open to the public and they simply serve the purpose of making notes of their business in order that various partners, stockholders, and other interested parties, may know how the transactions are carried on, for which reason the entry made by one of the directors of the defendant company was calculated to reach the knowledge of the other directors and shareholders, but not of any other persons.

As it is absolutely necessary that a firm or company transacting business of any great magnitude should employ a force of clerks, more or less large and numerous, it is, from the nature of the case, indispensible to place such employes in the class of persons occupying a position similar to that of a partner's, as set out in section 5 of the libel law quoted above. The fact that the obnoxious entry was read and commented on by the clerks and employes in the defendant's banking house was merely incidental to the existence of the entry itself and does not constitute an unlawful publication of the defamatory words by the defendant.

We think all this to be very clear and, therefore, that the entry referred to is a privileged communication, notwithstanding the fact that the same was seen by other employes of the firm, than those who made or transcribed it, which, in such a case, might otherwise be considered as a publication of the libel; but this fact would not change its character of a privileged communication.

Now then, the entry which is regarded as defamatory be-

ing in itself privileged, the point to which we have referred concerning malice is applicable to said alleged libel—that is to say, that the presumption of malice on the part of the defendant has vanished—the plaintiff being then required to prove the existence of such malice in a specific manner. And according to the judgment of this court to which reference has been made, in such cases malice must be shown by other evidence outside of the defamatory documents.

No sufficient proof was produced extrinsic to the obnoxious entry itself of any malice on the part of the defendant in using the words complained of in the pleadings. Then the entry being considered, under the circumstances of this case, as privileged and it being required to prove malice outside the words themselves, if it really existed, the claim set out in the complaint cannot be sustained.

But aside from these considerations, even had malice been proven in this case, it would have been necessary to show the resulting damages also. When the writing is defamatory *per se* and there is no privilege in favor of the defendant, this is sufficient for the plaintiff to entitle him to recover at least nominal damages without proving the same in any specific manner. But the contrary happens when, as in the present case, said presumption of malice is not held against the defendant on account of the privileged nature of the communication, in which case the plaintiff has to prove the damages resulting therefrom, as has been decided by this court in its judgment of Jiménez Sicardó, already cited.

Then, the court below seems to have taken a proper view of this case in finding it similar to the case of *Jiménez* v. *Díaz Caneja,* and in following the principles there laid down.

Considering, therefore, that the words appearing in the entry to which we have referred are defamatory *per se,* but at the same time that they are privileged, and there not having been shown, from outside proof, any malice on the part of defendant in the making of such entry, nor the damages·

thereby suffered, the judgment of the court below should be affirmed.

*Affirmed.*

Justices Wolf and del Toro concurred.

Chief Justice Hernández and Justice Figueras did not sit at the hearing of this case.